IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

MARY ANN STEWART,

       Defendant.

Criminal No. 15-0047
ELECTRONICALLY FILED

## Memorandum Opinion

### I. Introduction

On February 26, 2015, a federal grand jury returned an Indictment charging Defendant, Mary Ann Stewart, with a Five (5) Count Indictment charging one count of health care fraud and four counts of false statements to the grand jury in violation of 18 U.S.C. § 1347, and § 1623, respectively. On July 7, 2015, Defendant filed the instant Motion to Dismiss Counts Two, Three, and Five, of the Indictment (doc. no. 21), and following a Status Conference which occurred on July 13, 2015, the Government filed its Response in Opposition thereto (doc. no. 23). After careful consideration, and for the reasons that follow, the Court will DENY the Motion to Dismiss as to Counts Two and Three and will GRANT the Motion to Dismiss as to Count Five of the Indictment. The Trial of this matter (of the remaining Counts One, Two, Three and Four) will proceed as scheduled on November 2, 2015. Doc. No. 24.

### II. Legal Standard

Rule 12(b)(3)(B) permits a Court "at any time while the case is pending . . . [to] hear a claim that the indictment or information fails to . . . state an offense." When ruling on a motion to dismiss for failure to state an offense under Fed.R.Crim.P. 12(b)(3)(B), the Court is generally

limited to reviewing the face of the Indictment, and the allegations of the Indictment are to be accepted as true for purposes of the motion to dismiss. *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). A motion under Fed.R.Crim.P. 12(b)(3) is appropriate when it raises questions of law rather than fact. *See United States v. Levin*, 973 F.2d 463, 469 (6th Cir. 1992) (affirming the district court's dismissal of an Indictment when "undisputed extrinsic evidence" demonstrated that "the Government was, as a matter of law, incapable of proving" an element of the offense). As the United States Court of Appeals for the Sixth Circuit explained in *United States v. Levin*:

> Rule 12 of the Federal Rules of Criminal Procedure and its component parts encourage district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination without trial of the general issues. Moreover, district courts may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact.

973 F.2d 463, 469.

A pretrial motion raising factual issues may be ruled upon where there is no right to jury resolution of a factual dispute. *United States v. MacDougall*, 790 F.2d 1135 (4th Cir. 1986). Where the factual information underpinning the indictment is not in dispute and the only question is a legal one, motions to dismiss an Indictment may be ruled upon as a matter of law. See *United States v. Ali*, 557 F.3d 715, 719-29 (6th Cir. 2009)(the Court may rule on a motion to dismiss where defendant's motion pleads that undisputed facts did not give rise to the offense charged in the Indictment, or whether the Indictment, based on such undisputed facts failed to state an offense); *United States v. Flores*, 404 F.3d 320 (5th Cir. 2005).

The Indictment must include all of the elements of the crime alleged, *United States v. Spinner*, 180 F.3d 514 (3d. Cir. 1999), as well as specific facts that satisfy all those elements; a recitation "in general terms the essential elements of the offense" is not sufficient. *United States*

2

*v. Panarella*, 277 F.3d 678, 684-85 (3d Cir. 2002). The dismissal of an Indictment is authorized only if its allegations are not sufficient to charge an offense, but such dismissals may not be based upon arguments related to the insufficiency of the evidence that will be offered to prove the charges in the Indictment. *United States v. DeLaurentis*, 230 F.3d 659, 660-661 (3d Cir. 2000).

It is well-settled that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, *if valid on its face,* is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363 (1956) (footnote omitted and emphasis added).

Defendant Stewart's Motion to Dismiss under Rule 12(b)(3)(B), as a challenge to the sufficiency of the Indictment, should be decided based on the facts alleged within the four corners of the Indictment, not the evidence outside of it. *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). "A pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *DeLaurenti*s, 230 F.3d at 660).

"An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.1989) (quotation marks and citations omitted).

**III.    Discussion**

As stated above, in the Indictment against Defendant, in addition to the underlying health care fraud charges which are not the subject of this Motion to Dismiss, the grand jury charged four counts of false statements before the grand jury, in violation of 18 U.S.C. § 1623.

The relevant statutory text reads as follows:

> (a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years or both.

As Defendant notes, materiality is an essential element of a violation of 18 U.S.C. § 1623, and a question of law, a decision upon which is reserved to the Court. *United States v. Slawik*, 548 F.2d 75, 77 (3d Cir. 1977).   In order for there to have been a violation of Section 1623, Defendant's responses to the questions of the Prosecutor must have been both false *and* material.  If literally true, there was no offense, even if [Defendant's] answer was deliberately misleading. *Bronston v. United States*, 409 U.S. 352 (1973).

As the United States Court of Appeals for the Third Circuit held in *United States v. Slawik*, 548 F.2d at 83, a principal case cited by Defendant:

> [W]e hold that a conviction under 18 U.S.C. § 1623 may not stand where the indictment fails to set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods. To hold otherwise would permit the trial jury to inject its inferences into the grand jury's indictment, and would allow defendants to be convicted for immaterial falsehoods or for "intent to mislead" or "perjury by implication" which *Bronsto*n [*v. United States*, 409 U.S. 352 (1973)] specifically prohibited.

**A.    Count Two**

In the charging language of Count Two, the Indictment states as follows:

> 14. At the time and place aforesaid, the defendant, MARY ANN STEWART, appearing as a witness under oath at a proceeding before the

4

grand jury, knowingly made the following declarations in response to
questions with respect to the material matters alleged in paragraph 12 above, as
follows:
> Q. Okay.
> And, do you recall situations where there was a requirement that, say, Friday afternoon, that x number of patients had to be brought on, and nobody could leave the office?
> A. No. That was not -
> Q. Okay.
> A. It was basically – the whole thing is, is that with hospice, is that they are going out to talk to discharge planners, they are talking to, you know, physicians' offices, to have them decide to use your hospice versus hospice ABC, and the whole thing about the Friday was about the fact that sales reps were not making their sales calls.
> So they weren't actually – they weren't going out and seeing anybody. They weren't doing any of what they were assigned to do. They weren't going out and doing marketing.
> So the whole thing of about going home on Friday was that if they didn't complete their sales calls.
> But I mean, it was never above – it was never about admissions.
> 15. The aforesaid testimony of the defendant, MARY ANN STEWART, as she then and there well knew and believed, was false in that the defendant, MARY ANN STEWART, would instruct employees of Horizons Hospice that they could not leave the office on Friday evenings, or any evening, for purposes of admissions, and not for completing sales calls.

Doc. No. 1 at pp. 6-7.

According to Defendant, the Government selectively chose the language it wanted the jury to consider in Count Two and omitted references to Defendant's answer at page 23, line 18, wherein the following exchange occurred:

> Q. Was there a push for census, in terms of increasing the number of patients on the rolls of Horizons?
> A. There was at the time, somewhere between probably 16 to 18 hospices in the Pittsburgh area, and probably just as many in Altoona and, I mean, there were always patients who were appropriate, and the push was for them to go out and market to territories, so that we got admissions. So -- that "the push was for them to go out and market to territories, *so that we got admissions.*" . . . Tr. at 23, lines 11-18 (emphasis added).

As Defendant argues in her Motion to Dismiss Count Two of the Indictment:

> The clear import of the foregoing questions and answers is that the defendant acknowledged that on Friday afternoons that sales reps were required to end the week by performing their duties of making sales calls for the purpose of marketing their employer's facilities to obtain appropriate hospice patients. As the defendant acknowledged, 'the push was for them to go and market to territories, so that we got admissions.' Defendant thus acknowledged the Friday push for admissions but clarified at the end of the inquiry that the staff did not have to stay until they obtained admissions.

[Doc. No. 21 at p. 5](Doc. No. 21 at p. 5).

Defendant contends therefore that a review of the total line of questioning and answers by the Prosecutor establishes that Defendant conducted this practice for the admitted purpose of admissions and marketing. According to Defendant, she acknowledged what the Government contends she denied and her answers cannot form the basis for a false statement submission to the jury.

Defendant cites *Bronston v. United States*, 409 U.S. 352, 362 (1973) for the proposition that "the burden is on the questioner to pin down the witness to the specific object of the questioner's inquiry . . . '[p]recise questioning is imperative as a predicate for the offense of perjury.'" Defendant argues that this line of questioning was ambiguous and cannot form the basis for an Indictment thereon.

As the Government emphasizes and this Court agrees, the Court is limited to a review within the four corners of the Indictment. As rehearsed, it is well-established that:

> "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (footnote omitted and emphasis added). Indeed, we have previously held that, "for purposes of Rule 12(b)(2) [later superseded by Rule 12(b)(3)(B)], a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *Panarella*, 277 F.3d at 685 (emphasis added); see also *United States v. Taylor*, 154 F.3d 675, 681 (7th Cir.1998) ("The validity of an indictment is not affected by the form of the

> evidence considered, and an otherwise valid indictment cannot be challenged on the ground that the grand jury based it on inadequate or incompetent evidence.").

*United States v. Vitillo*, 490 F.3d 314, 320.

Contrary to Defendant's position, "[a]s a general rule, the fact that there is some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statements prosecution." *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir. 1987). While the Court of Appeals for the Third Circuit has found that a question may become so ambiguous that it is not amenable to jury interpretation, as the Court of Appeals explained in *United States v. Slawik*, 548 F.2d 75, 86 (3d Cir. 1977), that point is reached "when it is entirely unreasonable to expect that the defendant understood the question posed to him [or her]."

Where, as here, in instances of less than fundamental ambiguity, "it is for the petit jury to decide which construction the defendant placed on the question." *United States v. Fernandez*, 389 Fed. Appx. 194, 198 (3d Cir. 2010) (quoting *United States v. Serafini,* 167 F.3d 812, 820 (3d Cir. 1999)).

With respect to Count Two, while the questions of the Prosecutor were somewhat vague, they were not so ambiguous that it would have been entirely unreasonable to expect Defendant to have understood the questions posed of her. When questioned the practices on Friday evenings, Defendant answered "No, That was not-". Defendant then stated "so the whole thing about going home on Friday was that if they didn't complete their sales calls. But I mean, it was never about – it was never about admissions." [Doc. No. 1 at p. 5](). The Court is mindful that a motion to dismiss is not the proper mechanism to review the sufficiency of the evidence. *Huet*, at 595. This Court cannot say that the Indictment is deficient as a matter of law as to Count Two. Accordingly, the Court will DENY Defendant's Motion to Dismiss Count Two.

### B. Count Three

In the charging language of Count Three, the Indictment states as follows:

> 19. At the time and place aforesaid, the defendant, MARY ANN STEWART, appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declarations in response to questions with respect to the material matters alleged in paragraph 17 above, as follow:
> Q. What about Dr. Pueblitz, did you ever meet with Dr. Pueblitz, and drive around with him?
> A. I did not drive around with Dr. Pueblitz.
> Q. Okay.
> Did you ever – you and Kevin Deyarmin ever meet with Dr. Pueblitz, and have him sign recertifications that he had conducted face-to-face visits?
> A. Did we ever sign – I'm sorry, say that again.
> Q. Did you ever go with Kevin Deyarmin to meet with Dr. Pueblitz, and have him sign, in front of you, that he had conducted the face-to-face certifications?
> A. I don't remember doing that, no.
> 20. The aforesaid testimony of the defendant, MARY ANN STEWART, as she then and there well knew and believed, was false in that the defendant, MARY ANN STEWART, traveled with Kevin Deyarmin on multiple occasions to meet with Dr. Pueblitz to have him sign Horizons Hospice documents, including recertifications which documented the face-to-face visits. In violation of Title 18, United States Code, Section 1623.

Defendant again argues that the Prosecutor asked ambiguous questions relating to Defendant's actions to allegedly further the health care fraud scheme by obtaining recertifications, and argues that "[a] jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner." *Slawik*, 548 F.2d at 84 (quoting *Bronston*). While the *Bronston* case addresses a true answer that is intentionally misleading, whereas Defendant's answer here contains the statement "no." While the phrase "I don't remember doing that," is somewhat ambiguous, when followed by the word "no," the phrasing becomes a much less ambiguous answer. Again, as

stated above, some ambiguity will not foreclose an Indictment for perjury. *Ryan* at 1015; *United States v. Lowry*, 2014 WL 5795575 at *8 (E.D. Pa. November 6, 2014); *Fernandez* at 198. Again, the Court looks to the sufficiency of the evidence, and furthermore, cannot say as a matter of law that the Count Three of the Indictment fails as a matter of law. Defendant's Motion to Dismiss Count Three of the Indictment will be DENIED.

    **C.    Count Five**

In the charging language of Count Five, the Indictment reads as follows:

> 27. On or about December 10, 2014, in the Western District of Pennsylvania, the defendant, MARY ANN STEWART, while under oath and testifying in a proceeding before a duly constituted grand jury of the United States, knowingly did make a false material declaration, that is to say:
> 29. At the time and place aforesaid, the defendant, MARY ANN STEWART, appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declarations in response to questions with respect to the material matters alleged in paragraph 27 above, as follows:
> Q. At one point did your husband stay in a hotel in Altoona, and you put that on the company credit card?
> A. Yes.
> Q. Why did you do that?
> A. What do you mean, why did I do that?
> Q. Why did you do that, if he was not a company – your husband separated from you; correct?
> A. Yes.
> Q. And he lived in a hotel for a while in Johnstown –Altoona; is that correct?
> A. Yes.
> Q. And that was paid for by the Horizons company credit card?
> A. He was actually staying in Philadelphia.
> Q. Oh, Philadelphia?
> A. And he was coming back and forth to – when he came to Altoona, he stayed there, when he was in the Altoona office.

[Doc. No. 1 at p. 14](#).

9

According to the above, Defendant acknowledged and answered "yes" unequivocally to the question regarding her husband staying in Altoona and placing the related charges on the company credit card. The Government cites the questioning above and contends what it claims to be the false testimony of Defendant as follows:

> 30. The aforesaid testimony of the defendant, MARY ANN STEWART, as she then and there well knew and believed, was false in that the defendant, MARY ANN STEWART, utilized the Horizons Hospice company credit card to pay for hotel rooms in Altoona, Pennsylvania for her husband, not because he was living in Philadelphia and traveling to Altoona, PA for business, but to pay for the personal expenses of her husband who resided in Altoona, Pennsylvania. In violation of Title 18, United States Code, Section 1623.

Doc. No. 1 at p. 15.

What is noticeably absent from the line of questions by the Prosecutor is whether the payments were business expenses or personal expenses and Defendant never stated one to the exclusion of the other. Rather, according to the Indictment, she testified that when "he came to Altoona," when he "stayed in Altoona," "when he was in the Altoona office," she paid the hotel bills with the company credit card. Defendant contends, and this Court agrees, that there is no false statement for the jury to consider.[1]

Defendant also contends that in a health care fraud case based upon violation of hospice regulations, it is not material whether Defendant used a company credit card for personal

---

[1] In the Government's brief, it conflates the issue by stating "but when the prosecutor asks the defendant if funds from Horizon were used to pay for her husband to stay in Altoona, she states he was actually staying in Philadelphia." Doc. No. 23 at p. 7. The question and answer portion of Count Five do not actually state what the Government contends. Instead, the only unambiguous question and answer is as follows: Q. At one point did your husband stay in a hotel in Altoona, and you put that on the company credit card? A. Yes. As the Court in *Bronston* explained: "It is the responsibility of the lawyer to probe; testimonial interrogation, and cross-examination in particular, is a probing, prying, pressing form of inquiry. If a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination." *Id*. at 359.

expenses. Defendant argues that absent from the Indictment is an allegation that Defendant earmarked moneys obtained by health care fraud to pay the hotel bills.

Under Section 1623, a false statement is material if "it has a tendency to influence, impede, or hamper the grand jury from pursuing its investigation." *United States v. Reilly*, 33 F.3d 1396, 1419 (3d Cir.1994) (inner quotations omitted). "Materiality is not, however, a question of whether the false statements actually influenced the investigation or prosecution, but whether the false statements were 'capable of influencing' the investigation or prosecution." *United States v. Thompson*, 513 Fed. Appx. 138 *2 (3d Cir. 2013)(quoting *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir.2004)). Although the materiality of these statements (assuming for argument that they contained false statements) is subject to interpretation, as the Government emphasizes, and this Court agrees, the United States Court of Appeals for the Third Circuit employs a broad interpretation of materiality. *United States v. Chinnery*, 68 Fed. Appx. 360, 364 (3d Cir. 2003)(citing *United States v. Regan*, 103 F.3d 1072, 1084 (2d Cir. 1997)). In any event, the Court need not reach the materiality issue[2] at this juncture to determine whether the testimony was capable of influencing the prosecution, because the Court finds no false statement.

---

[2] Defendant does not appear to challenge the materiality element of Counts Two and Three and therefore the Court does not address them.

## IV. Conclusion

For the reasons set forth hereinabove, Defendant's Motion to Dismiss will be GRANTED as to Count Five and DENIED as to the Counts Two and Three.

An appropriate Order follows.

**SO ORDERED** this 21st day of August, 2015.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All Registered ECF Counsel and Parties